## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. WILSON, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. 2:22-cv-776 |
| | : |
| v. | : |
| | : |
| COLUMBIA GAS OF PENNSYLVANIA | : PLAINTIFF REQUESTS |
| and DARRYL WARGO, | : TRIAL BY JURY |
| | : |
| Defendant. | : |
| | : |

Plaintiff, Richard A. Wilson, by and through undersigned counsel hereby files this Civil Action Complaint against Defendant, Columbia Gas of Pennsylvania and Darryl Wargo (individually) and avers the following:

### PARTIES

1.      Plaintiff, Richard A. Wilson, ("Mr. Wilson" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania.

2.      Plaintiff, Richard A. Wilson is an African American Male of Jamaican descent who was born in Jamaica and emigrated to the United States.

3.      Defendant, Columbia County Gas of Pennsylvania, is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 2G Civic Center Drive, Columbus, Ohio 43215.

4.      Defendant, Darryl Vargo, is an adult individual who resides in the Commonwealth of Pennsylvania with a business address at 2G Civic Center Drive, Columbus, Ohio 43215.

5.      At all times material to this civil action, Defendant, Darryl Vargo was Plaintiff, Richard A. Wilson's supervisor and held supervisor liability his discriminatory, unlawful treatment of Mr. Wilson.

6.      At all times material to this civil action, Defendant, Darryl Vargo was a supervisor and held the authority afforded by Defendant, Columbia Gas of Pennsylvania to change the terms and conditions of Mr. Wilson's employment.

7.      At all times material to this civil action, Plaintiff was an employee of Defendant, Columbia Gas of Pennsylvania.

8.      At all times material to this civil action, Plaintiff was qualified for the position of his employment.

## NATURE OF THE CASE

9.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); 42 U.S.C. § 1981; the Family Medical Leave Act ("FMLA"); the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"); under the laws of the Commonwealth of Pennsylvania, and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation which ultimately led to Plaintiff's unlawful termination from his employment.

## JURISDICTION AND VENUE

10.      This action involves a Question of Federal Law under the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, and Section 1981.

11.     The honorable Court has supplemental jurisdiction over Plaintiff's Commonwealth claims under the Pennsylvania Human Relations Act.

12.     Venue is proper in the Western District of Pennsylvania as Plaintiff was employed by Defendant and worked within the jurisdiction of the Western District of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

13.     Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant as set forth herein.

14.     Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission.

15.     On or about February 24, 2022, the EEOC issued a Dismissal and Notice of Rights, which provides that Plaintiff must file a lawsuit within 90 days of the date when the Dismissal and Notice of Rights was received by the Plaintiff.

16.     This action is hereby commenced within ninety (90) days of the date when the Dismissal and Notice of Rights was received by Plaintiff.

17.     Plaintiff's claims under the Pennsylvania Human Relations Act will be ripe after one year has passed from the date when Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission.

18.     Accordingly, Plaintiff will amend this civil action complaint to include his claims under the Pennsylvania Human Relations Act when one year has passed from the date when Plaintiff's Charge was filed with the Pennsylvania Human Relations Commission.

## **MATERIAL FACTS**

19.     Plaintiff, Richard A. Wilson, was born and raised in Jamaica, West Indies.

20.     Mr. Richard's native language is English.

3

21.     Throughout Mr. Richard's life, he worked with people from all over the world with various backgrounds who spoke various languages.   This required Mr. Wilson to learn to be an effective communicator.

22.     Mr. Wilson moved to the Commonwealth of Pennsylvania in 2002, when Mr. Wilson was an adult.

23.     Mr. Wilson began his employment for Defendant, Columbia Gas of Pennsylvania on January 7, 2008, as a Service Technician.

24.     Upon beginning his employment, Mr. Wilson noted that he was the only employee of color, with an African American race and Jamaican national origin who worked for Defendant.

25.     From his date of hire on January 7, 2008, until the date of his unlawful termination from employment, in January 2021, Mr. Wilson maintained perfect attendance and performed his job with excellence and skill.

26.     Accordingly, Mr. Wilson's annual performance reviews were always satisfactory and Mr. Wilson earned annual incentives, bonuses, and raised throughout his employment for Defendant.

27.     Mr. Wilson also volunteered his time to give back to his community and chose to participate in the "HeatWise" program from September 21, 2013, through the present.

28.     The HeatWise program is an annual community awareness event that provides free services to those less fortunate and perform safety checks on gas lines and equipment.

29.     Mr. Wilson looked forward to this event every year in order to give back to his community and customers who were less fortunate.

30.     Throughout his almost 15-year career with Columbia Gas of Pennsylvania, Mr. Wilson received various complimentary letters and phone calls from satisfied customers.

31.     Sometime around 2008, Plaintiff, Richard A. Wilson, noted that he was singled out and treated differently than similarly situated white, Caucasian employees who were not members of Mr. Wilson's protected class based on race and national origin.

32.     These incidents of discrimination started in 2008 and became more frequent over the years.

33.     In 2012, Plaintiff, Richard A. Wilson began keeping a log of the discriminatory conduct to which Mr. Wilson was subjected by Defendant based on race and national origin.

34.     The discrimination and harassment of Mr. Wilson by Defendant were severe and pervasive and created a hostile work environment for Mr. Wilson based upon Mr. Wilson's race and national origin.

35.     Plaintiff was subjected to conduct and comments of a race and national origin-based nature that had the purpose and effect of unreasonably interfering with Mr. Wilson's work environment and which led to Mr. Wilson being subjected to an adverse employment action by Defendant.

36.     Plaintiff, Richard A. Wilson, was subjected to race and national origin-based comments including but not limited to derogatory questions about whether Jamaican people live in stick houses.

37.     Other comments occurred when Mr. Wilson was asked to take off his hat so that a coworker could defecate in it.

38.     When Mr. Wilson took the initiative to look presentable and wear collared shirts, Mr. Wilson was subjected to ridicule and told that Mr. Wilson is trying to look like a boss.

39.     Mr. Wilson was sent to low income, higher crime, neighborhoods, even at night and was singled out for these assignments due to his race and national origin.

40.     Mr. Wilson was referred to as "the Black guy" including a comment where one individual with whom Mr. Wilson worked said, "what is that Black guy about".

41.     Mr. Wilson heard the race and national origin-based comment.

42.     At no time did Defendant take any action to ameliorate the discrimination and harassment in the workplace.

43.     Defendant permitted, allowed, and condoned the discrimination and harassment in the workplace which only caused the discrimination and harassment to continue and escalate.

44.     Plaintiff, Richard A. Wilson, was subjected to threats and ridicule including comments that Mr. Richards should watch himself because they don't want you here.

45.     Mr. Wilson was the first Black man of Jamaican descent to be hired by Defendant and Mr. Wilson's white, Caucasian coworkers threatened Mr. Wilson, telling him that he was not wanted and that Mr. Wilson better watch out.

46.     The conduct and comments to which Mr. Richards was subjected was discriminatory on their face and clearly intended to subject Mr. Richards to a threatening, abusive, hostile work environment which began early on and continued throughout Mr. Wilson's career until Mr. Richard filed a Charge of Discrimination with the Equal Employment Opportunity Commission which was dual filed with the Pennsylvania Human Relations Commission.

47.     Because Mr. Wilson filed a Charge within 300 days of the last derogatory, abusive conduct and/or comment that was part of the hostile work environment, the entire hostile work environment claim dating back to 2008 is included in this lawsuit under the continuing violations doctrine.

48.     Mr. Wilson was singled out and treated differently than coworkers who were not members of Mr. Wilson's protected class based on race and national origin.   By way of example,

Mr. Wilson was subjected to discriminatory treatment by supervisors who subjected Mr. Wilson to disciplinary action.

49.     Similarly situated coworkers were not subjected to equal treatment by Mr. Wilson's supervisors.

50.     Sometime around January 11, 2012, Mr. Wilson was working the 2:00 P.M. – 10:00 P.M., shift, and received a five (5) day suspension without pay.

51.     This suspension constituted disparate treatment, however, this information is presented as part of Mr. Wilson's hostile work environment claim only due to the timing of Mr. Wilson's Charge of Discrimination filing date.

52.     Supervisor, Darryl Wargo fabricated the reason for discipline by stating that Plaintiff, Richard A. Wilson refused to respond to an emergency call about a gas leak at a premise.

53.     At no time did Mr. Wilson refuse an emergency call about a gas leak.

54.     At all times related to this discriminatory writeup and disciplinary action, Mr. Wilson responded to the emergency call and immediately visited the property and fixed the gas leak, making the property safe.

55.     Mr. Wilson reported Supervisor, Darryl Wargo's unfair, unequal treatment of Mr. Wilson.

56.     Even though Mr. Wilson responded to the emergency call and fixed the problem, Mr. Wilson was still subjected to disciplinary and unfair treatment.

57.     Defendant returned four out of the five days of pay back to Mr. Wilson and changed Mr. Wilson's incentive pay from 50% to 100%, however, Defendant still subjected Mr. Wilson to one day of lost pay and no action was taken at all to deal with the false writeup by Supervisor, Darry Wargo.

58.     Mr. Wilson was not treated like similarly situated coworkers.   By way of example only, when Mr. Wilson made reasonable requested, like to be relieved from a shift as soon as possible after a shift ended, Defendant accused Mr. Wilson of refusing to work.

59.     A request to be relieved was a common request and Mr. Wilson was treated in an adverse, abusive, and hostile manner and accused of impropriety for engaging in the same conduct as white, Caucasian workers.

60.     Defendant often subjected Mr. Wilson to unfair treatment in the form of work assignments.

61.     Mr. Wilson was often assigned "emergency jobs" at the tail-end of Mr. Wilson's shift.   When Mr. Wilson's shift ended at 10:00 P.M., Defendant ordered Mr. Wilson to respond to calls that came in at 9:59 P.M., to which other white, Caucasian coworkers could have easily responded.

62.     Mr. Wilson was also ordered to respond to a "connect order" at 9:00 P.M. when his shift was scheduled to end at 10:00pm, which is a significantly time-consuming job.   When Mr. Wilson responded and investigated, it was determined that there was a condemned line which could not be connected.

63.     A condemned line is something that dispatch would have known about and orders for condemned lines do not require a dispatch.

64.     If Mr. Wilson complained and reported this type of unequal, discriminatory treatment, Mr. Wilson was accused of not doing his job.

65.     Mr. Wilson attempted to report and oppose the unequal, discriminatory treatment to supervisor, Darryl Wargo.

66.     Supervisor, Darryl Wargo took no action to escalate Mr. Wilson's reports and the discrimination and harassment continued.

8

67.     Plaintiff, Richard A. Wilson was singled out and treated differently that similarly situated coworkers who were not subjected to the conduct and comments described herein.

68.     Mr. Wilson maintained perfect attendance throughout his entire time employed by Defendant.

69.     Defendant held a celebration to award and recognize employees with perfect attendance.

70.     The white, Caucasian employees were invited to the celebration, where Defendant recognized, honored, and awarded the white, Caucasian employees with a free luncheon.

71.     Defendant refused to even tell Mr. Wilson about the celebration and refused to recognize, honor, and award Mr. Wilson even though Mr. Wilson's attendance record was 100% perfect.

72.     Supervisor, Darryl Vargo subjected Mr. Wilson to discriminatory, abusive treatment by using his authority as a supervisor to unreasonably interfere with Mr. Wilson's work environment.

73.     Sometime around August 30, 2012, Defendant and supervisor, Darryl Wargo canceled Mr. Wilson's company credit card which Mr. Wilson needed in order to perform the responsibilities of Mr. Wilson's employment.

74.     Mr. Wilson learned about this hostile treatment when Mr. Wilson tried to make a purchase for supplies and was informed that the credit card was declined.

75.     Defendant, Darryl Wargo admitted to canceling the credit card and refused to provide an explanation for the reason why Mr. Wilson was the only employee to receive this type of treatment.

76.     Plaintiff, Richard A. Wilson, was also subjected to unequal treatment when Defendant disconnected Mr. Wilson's company I.D. badge and refused to address the problem

when Mr. Wilson filed a report and notified supervisor, Doug Williams and supervisor, Virginia Rodgers.

77.     Mr. Wilson reported the issue several times to both supervisor, Doug Williams and supervisor, Virginia Rodgers and supervisor, Doug Williams and supervisor, Virginia Rodgers refused to address the issue.

78.     Defendant also subjected Mr. Wilson to a hostile work environment through job assignments and the work conditions to which Mr. Wilson was subjected.

79.     On another occasion, Mr. Wilson was on a service call and during Mr. Wilson's investigation, Mr. Wilson located a gas leak.   A gas leak is a significant event that implicates the public safety.   Mr. Wilson responded as required by identifying the source of the leak and marking it with a red-tag.

80.     Upon marking the gas leak with the red-tag, Mr. Wilson was subjected to abusive, threatening, insulting conduct and comments by the property owner who got in Mr. Wilson's face while screaming, cursing, and threatening Mr. Wilson.

81.     The property owner threatened Mr. Wilson, stating that if Mr. Wilson returned to the property, the property owner would have Mr. Wilson "canned."

82.     Mr. Wilson reported the incident to his supervisors, John Welch and Doug Williams, who both worked within the Integration Center. Mr. Wilson explained in the report the property owners threats of violence and violent conduct and comments.

83.     Mr. Wilson requested not to be sent back to that address, to which it was agreed that Mr. Wilson should not be sent back to that address.

84.     Defendant noted the system that Mr. Wilson should not be sent back to that property.

85.     Thereafter, Defendant required Mr. Wilson to return to that same property at least thirty-one (31) times, resulting in more abusive and violence directed at Mr. Wilson.

86.     During the return assignments following the first incident and report by Mr. Wilson, Mr. Wilson was ordered to return to the property where Mr. Wilson was verbally attacked by the property manager who threatened Mr. Wilson, screaming that Mr. Wilson needed to get out of the property and leave.

87.     Mr. Wilson again reported the incident with the property manager to the Integration Center and supervisors Doug Williams and John Welch.

88.     Thereafter, Mr. Wilson was ordered to return to the property again.

89.     Following these incidents and several reports by Mr. Wilson to supervisors, Mr. Wilson was repeatedly ordered to return to the property and at least thirty-one (31) times Mr. Wilson was ordered by Defendants to return to a property.

90.     This is the definition of harassment where Defendants knowingly and intentionally subjected Mr. Wilson to abusive working conditions repeatedly as part of a pattern of abusive, hostile treatment because of Plaintiff, Richard A. Wilson's race and national origin.

91.     Defendants and the many supervisors to whom Mr. Wilson repeatedly reported the harassing conduct continued to send Plaintiff, Richard A. Wilson back to a property that Defendant and supervisor John Welch, supervisor, Doug Williams, Karrie in Dispatch, Mindy in dispatch, Aaron Chamberlain knew or should have known that Mr. Wilson should not be dispatched.

92.     Defendant and Defendant's employees knew or should have known that Mr. Wilson should not be dispatched to that job where Mr. Wilson was dispatched at least thirty-one (31) times, because the property owner said to Defendant that "if they send that Jamaican back, I am going to shoot him."

93.     Defendant made it a common practice to send Plaintiff, Richard A. Wilson to properties where it was known that Mr. Wilson would be subjected to harassing, abusive conduct and comments based upon Mr. Wilson's race and national origin.

94.     Mr. Wilson was assigned a company van that Mr. Wilson kept at his home and maintained on his own.

95.     The company van has issues with the door-locking mechanism and Mr. Wilson reported the issue and Defendant refused to respond and assist Mr. Wilson in having it fixed.

96.     Mr. Wilson also required a computer and smart phone in order to perform the responsibilities of daily employment.

97.     Mr. Wilson reported issues with his computer and Defendant refused to help or assist Mr. Wilson in resolving the reported issues.

98.     Mr. Wilson was singled out and subjected to harassment and unequal treatment during the COVID19 pandemic when Defendant refused to cover the cost of COVID testing that Defendant required in order for Mr. Wilson to return to work.

99.     Mr. Wilson attempted to get help with his company van, computer, and phone from his supervisor, who responded by calling Mr. Wilson a schizophrenic and subjecting Mr. Wilson to disciplinary action.

100.    Defendant responded to Mr. Wilson's reports and issues by accusing Mr. Wilson of being crazy and sending Mr. Wilson home for two weeks and ordering Mr. Wilson to undergo a medical evaluation.

101.    At no time did Mr. Wilson require a medical evaluation.

102.    At no time did Mr. Wilson engage in any conduct that should have resulted in discipline.

103.    Defendant singled Mr. Wilson out and subjected Mr. Wilson to discrimination and harassment in the workplace by through disciplinary action, and by sending Mr. Wilson home and requiring Mr. Wilson to undergo a medical evaluation.

104.    Defendant responded to Mr. Wilson's reports of unequal treatment, and harassing, discriminatory conduct by calling Mr. Wilson crazy and requiring Mr. Wilson to undergo a mental health evaluation before Mr. Wilson could continue his employment.

105.    Plaintiff, Richard A. Wilson responded to Defendant's highly inappropriate, unlawful conduct by explaining that Mr. Wilson did not need a medical evaluation and that the mere suggestion was unprofessional, unwarranted, and untrue.

106.    Plaintiff, Richard A. Wilson reported that Defendant was subjecting Mr. Wilson to defamation by labeling Mr. Wilson as crazy because Mr. Wilson was reporting evidence of discrimination and harassment in the workplace.

107.    Defendant refused to consider Mr. Wilson's position and still ordered Mr. Wilson to discontinue working.

108.    During the time when Defendant would not allow Mr. Wilson to work, which was sometime around February 2021, Mr. Wilson contacted Defendant to ask when Mr. Wilson could return to work.

109.    There was no reason for Defendant to subject Mr. Wilson to disparate treatment other than Mr. Wilson's race, national origin, and perceived disability under the Americans with Disabilities Act.

110.    Sometime around February 3, 2021, Mr. Wilson was contacted by Katie at Medical Consultant Network who was stated that Defendant required Mr. Wilson to undergo a medical evaluation before Mr. Wilson could work.

13

111.    This medical evaluation was first suggested by supervisor, Randy Papper, who subjected Mr. Wilson to discrimination and harassment in the workplace and hostile work environment.

112.    Supervisor, Randy Papper responded to Mr. Wilson's reports of unequal and abusive treatment by calling Mr. Wilson crazy and requiring Mr. Wilson to undergo a medical evaluation for mental health.

113.    At all times material to this civil action the medical evaluation scheduled and paid for by Defendant was a sham and intended to disparage and defame Plaintiff, Richard A. Wilson.

114.    Plaintiff, Richard A. Wilson still attended the medical evaluation even though it was a sham evaluation.

115.    The sham medical evaluation was conducted by a Dr. Wettstein, who was selected by Defendant and paid by Defendant to write an evaluation that resulted in Mr. Wilson being subjected to further discrimination.

116.    After nearly 15 years of perfect service, fulfilling the responsibilities of his employment, Defendant's selected and paid for doctor, Dr. Wettstein, concluded that Mr. Wilson was not fit for duty as a Service Technician for Defendant.

117.    Dr. Wettstein's paid for conclusion was reached without ever contacting Mr. Wilson's primary care physician or reviewing Mr. Wilson's medical records from medical professionals who actually knew and treated Mr. Wilson.

118.    Dr. Wettstein reached his sham conclusion, even though Dr. Wettstein agreed that there was "no evidence of psychosis such as schizophrenia or other serious mental disorder".

119.    Dr. Wettstein's conclusion was not based on any treatment or diagnosis of Mr. Wilson because Dr. Wettstein never treated Mr. Wilson or reached a diagnosis.

120.    Dr. Wettstein's sham conclusion was only that Mr. Wilson was not fit for service with Columbia Gas.

121.    Defendant relied on the sham conclusion of Dr. Wettstein to continue the discriminatory treatment of Plaintiff, Richard A. Wilson and refused to allow Mr. Wilson to work.

122.    Mr. Wilson met with a medical professional sometime around April 12, 2021, who evaluated Mr. Wilson and concluded that Mr. Wilson may suffer from slight anxiety which was caused by Defendant's conduct and comments of Mr. Wilson.

123.    Anxiety is a medical condition that is considered a disability under the Americans with Disabilities Act because it substantially limits a major life activity including but not limited to sleeping.

124.    Defendant refused to allow Mr. Wilson to work even though Mr. Wilson proved for almost fifteen (15) years of employment that Mr. Wilson could perform his daily responsibilities of employment.

125.    Plaintiff, Richard A. Wilson presented Defendant with the conclusions of Dr. Grahm, who is the medical professional with whom Mr. Wilson met.

126.    Defendant still refused to allow Mr. Wilson to return to work.

127.    Defendant said to Mr. Wilson that Dr. Grahm and Dr. Wettstein needed to meet and agree on a third doctor who needed to perform a third evaluation before Mr. Wilson could work.

128.    There is no basis in fact or law for Defendant's illegal position and Plaintiff, Richard A. Wilson continued to be subjected to a suspension without pay because Mr. Wilson's supervisor called Mr. Wilson crazy.

129.    When Plaintiff, Richard A. Wilson reviewed his personnel file, Mr. Wilson and Mr. Wilson's union representative found what appeared to be fabricated documents in Mr. Wilson's

personnel file that Defendants conceded did not belong and which were removed subject to a union grievance.

130.    Defendant refused to pay Mr. Wilson during the illegal suspension without pay, even after Mr. Wilson, through the union challenged the unlawful, disparate treatment.

131.    Upon meetings with Defendant and Mr. Wilson's supervisors, it became evident that Defendant and Dr. Wettstein had conspired to removed Mr. Wilson from work illegally through the sham conclusion of Dr. Wettstein.

132.    The union on behalf of Mr. Wilson asked Dr. Wettstein for all information upon which Dr. Wettstein reached his conclusions that resulted in Mr. Wilson being ejected from his employment without pay.

133.    Dr. Wettstein stated that he spoke to supervisor, Haleigh Resnik and supervisor, Randy Pappa, both of whom provided information to Dr. Wettstein that became part of Dr. Wettstein's conclusions about Mr. Richard's fitness for work.

134.    Sometime around May 3, 2021, Defendant spoke to Mr. Wilson again and refused to allow Mr. Wilson to continue his employment and refused to pay Mr. Wilson during the period of the unlawful suspension without pay.

135.    Defendants have subjected Plaintiff, Richard A. Wilson to disparate treatment by refusing to allow Mr. Wilson to work because of Mr. Wilson's race and national origin.   Mr. Willson has been effectively terminated from his employment by Defendant due to race and national origin.

136.    Defendants subjected Plaintiff, Richard A. Wilson to hostile work environment by subjecting Mr. Wilson severe and pervasive conduct and comments based on Mr. Wilson's race and national origin for almost 15 years consistently which significantly interfered with Mr. Wilson's work environment.

137.    Defendants have subjected Mr. Wilson to discrimination because of a disability or perceived disability by refusing to allow Mr. Wilson to work because of a sham medical evaluation paid for and set up by Defendant after Mr. Wilson proved he could perform the responsibilities of his employment for almost 15 years of employment.

138.    Defendant's position is that Mr. Wilson is not fit for duty because of a mental health condition.

139.    Defendant subjected Plaintiff, Richard A. Wilson to retaliation as there is a direct causal link to the many reports of Plaintiff, Richard A. Wilson and the adverse employment action.

140.    Mr. Wilson continued to report issues to his supervisors who responded by calling Mr. Wilson crazy and ejecting Mr. Wilson from his employment.

141.    Defendant has subjected Mr. Wilson to violation of the Family and Medical Leave Act ("FMLA") by interfering with Mr. Wilson's rights under the FMLA through violations of the FMLA including not allowing Mr. Wilson to return to work.

142.    As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

143.    As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

144.    Plaintiff has been subjected to personal injuries including physical injuries caused by Defendant's unlawful conduct.

145.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails.

146.    Plaintiff also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

17

147.    Plaintiff has further experienced severe emotional and physical distress.

148.    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

149.    Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

150.    Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

151.    Defendant's discriminatory conduct was severe and pervasive, creating a hostile work environment for Plaintiff.

152.    The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

153.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

154.    Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

155.    Plaintiff, Mr. Wilson, claims unlawful termination and requests reinstatement.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981**
**(against all defendants)**

156.    Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

157.    42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

158.    Plaintiff, as a member of the Black and/or African-American race and Jamaican national origin, was discriminated against by Defendant because of his race and national origin, as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

159.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendant's unlawful employment practices.

**COUNT II**
**DISCRIMINATION UNDER TITLE VII**
**HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT**
**(against corporate Defendant only)**

160.    Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

161.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendant' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and/or national origin.

162.    SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

163.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, color, and national origin.

164.    Defendant subjected Plaintiff to severe and pervasive discrimination and harassment in the workplace because of Plaintiff's race and national origin.

165.    Defendant subjected Plaintiff to disparate treatment by terminating Plaintiff because of his race and national origin.

## COUNT III
## RETALIATION UNDER TITLE VII
### (against corporate Defendant only)

166.    Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

167.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: (1) to . . . discriminate against any of his employee . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

168.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendant.   Defendant took action against Plaintiff due to Plaintiff's opposition to Defendant's discrimination and harassment of Plaintiff.

169.    Defendant responded to reports of unlawful conduct by Plaintiff by refusing to allow Plaintiff to continue working and terminating Plaintiff's employment.

### COUNT IV
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### DISPARATE TREATMENT
### (against corporate Defendant only)

170.    Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

171.    Section 102 of the Americans with Disabilities Act ("ADA") states in relevant part as follows:

(a) GENERAL RULE - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

172.    At all times material to this civil action, Plaintiff was capable of performing the duties of several available suitable positions for Defendant.

173.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

174.    Without diagnosis, Defendant perceived [1] Plaintiff, Mr. Wilson, to be schizophrenic, because agents for Defendant stated this in a meeting that Plaintiff was present for.

---

[1]    The ADAAA broadened the scope of disability by providing that a plaintiff may establish that his employer regarded her as disabled merely by showing that the employer subjected him to an adverse employment action on the basis of an actual or perceived impairment; whether the employer believed that any impairment substantially limited the plaintiff's major life activities is no longer dispositive under the ADA. 42 U.S.C. § 12102(3)(A); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n. 17 (3d Cir. 2009).

175.     During such time, Defendant continually, intentionally, and in a discriminatory manner refused to allow Plaintiff to return to his former position or any other position because of Defendant's perception of Plaintiff's alleged disability of schizophrenia.

176.     At all times material to this civil action, Defendant attempted to use Plaintiff's medical status in order disallow Plaintiff from continuing Plaintiff's employment for Defendant.

177.     At all times Plaintiff was able to fulfill the job requirements of his employment and work without restriction.   Defendant manufactured discriminatory conditions to Plaintiff's employment that did not exists for any other employee.

178.     Defendant's perception of Plaintiff's disability was entirely unfounded and unsubstantiated.

179.     Defendant refused to engage Plaintiff in an interactive process to discuss reasonable accommodations that might have permitted Mr. Wilson from continuing his employment.

180.     Defendant' termination of Plaintiff was not based on any medical justification and was discriminatory as to Plaintiff.

181.     Defendant effectively terminated Plaintiff because of a perceived or actual disability.

182.     Such adverse employment actions by Defendant are in stark violation of the ADA.

183.     Following Defendant's termination of Plaintiff, Plaintiff was replaced by a non-disabled individual.

184.     As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

185.     Plaintiff also claims unlawful retaliation under the ADA for her opposition to Defendant's unlawful employment practice.

186.     Plaintiff makes claims for all damages available under the ADA.

## COUNT V
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (against corporate Defendant only)

187.     Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

188.     Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

189.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

190.     Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff due to Plaintiff's reports of discrimination and harassment in the workplace.

191.     As such, Plaintiff has been damaged as set forth herein.

## COUNT VI
## INTERFERENCE WITH FAMILY MEDICAL LEAVE ACT
### (against all Defendants)

192.     Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding

paragraphs as fully as if they were set forth at length.

193.    §2612 of the FMLA states in pertinent part:

(a) In General

   (1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period of one or more of the following:

   (A) Because of the birth of son or daughter of the employee and in order to care for such son or daughter.
   (B) Because of the placement of a song or daughter with the employee for adoption or foster care.
   (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
   (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

194.    Defendant violated Plaintiff's rights under the FMLA by interfering with Plaintiff's leave by continuously misleading Plaintiff and by giving him incorrect information about his leave eligibility.

195.    Plaintiff would have modified his conduct and not have sought continuous and/or intermittent leave, if he had known that his employer would count such leave as adverse incidents, and thus, detrimentally relied on employer's representations.

196.    Defendant, by and through its managers, officials, and employees, by acts or representations intentionally or through culpable negligence included Plaintiff to believe that certain facts existed regarding his right to FMLA leave or leave that would not be counted against him and he justifiably relied and acted upon such belief, so that he will be prejudiced if the Defendant is permitted to deny the existence of such facts.

197.    Defendant violated Plaintiff's rights by failing to provide him with appropriate

leave thereunder.

198.    § 2615 of the Act states as follows: Prohibited acts

(a) Interference with rights

(1) Exercise of rights:
    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination:
    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

199.    Defendant interfered with Plaintiff's rights under the above section and discriminated against Plaintiff and discharged Plaintiff from his employment for opposing Defendant' unlawful employment practices and attempting to exercise his rights.

## COUNT VII
## DISCRIMINATION UNDER STATE LAW
### (against corporate Defendant only)

**(to be added to Plaintiff's lawsuit by amendment when Plaintiff's claims under the PHRA are ripe)**

200.    Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

201.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

202.     Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race and national origin and due to Plaintiff's disability or perceived disability.

203.     Defendant also engaged in unlawful discriminatory conduct by discriminating against Plaintiff due to Plaintiff's disability and/or perceived disability.

204.     Defendant refused to provide Plaintiff with reasonable accommodations and did not engage Plaintiff in an interactive process to discuss Plaintiff's requests.

205.     Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of the PHRA § 955.

**COUNT VIII**
**<u>RETALIATION UNDER STATE LAW</u>**
**(against all Defendants)**

**(to be added to Plaintiff's lawsuit by amendment when Plaintiff's claims under the PHRA are ripe)**

206.     Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

207.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice:

> For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

208.     Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

209.     Specifically, Defendant took action against Plaintiff due to Plaintiff's opposition to Defendant' discrimination and harassment of Plaintiff.

210.     Defendant also took action against Plaintiff because of a disability or perceived disability under the ADA.

211.     Plaintiff attempted to discuss the issues surrounding Defendant's ideas that Plaintiff could not work because of Plaintiff's mental health status.

212.     Plaintiff reported, discussed and opposed Defendant's position and Defendant refused to allow Plaintiff to continue his employment for Defendants.

## COUNT IX
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
### (against individual Defendant only)

**(to be added to Plaintiff's lawsuit by amendment when Plaintiff's claims under the PHRA are ripe)**

213.     Plaintiff, Mr. Wilson, hereby incorporates all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

214.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

215.     Defendant engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.   Defendant aided and abetting the above discrimination based on Plaintiff's race, color and national origin and due to Plaintiff's perceived disability.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages,

statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

Dated: May 25, 2022

Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net

Seth D. Carson, Esq.*
**DEREK SMITH LAW GROUP, PLLC**
1845 Walnut Street
Suite 1600
Philadelphia, PA 19103
Phone: 215.391.4790
seth@dereksmithlaw.com

*Attorneys for Plaintiff*
*Pro Hac Vice Forthcoming