**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD A. WILSON,                      )
                                        )
                Plaintiff,              )
                                        )
        vs                              )        Civil Action No. 2:22-776
                                        )
                                        )        Magistrate Judge Dodge
COLUMBIA GAS OF PENNSYLVANIA and        )
DARRYL WARGO,                           )
                                        )
                Defendants.             )

## <u>MEMORANDUM OPINION</u>

Plaintiff Richard A. Wilson ("Wilson") brings this action under a variety of civil rights statutes, alleging that he was discriminated against based on his race, national origin and disability. Further, he alleges that he was subjected to retaliation for submitting complaints about discrimination, including being subjected to a hostile work environment, being forced to take a fitness for duty examination and then being placed on leave, culminating in the termination of his employment. Named as defendants are his former employer, Columbia Gas of Pennsylvania ("Columbia Gas") and former supervisor, Darryl Wargo ("Wargo").

Pending before the Court is Defendants' partial motion to dismiss. For the reasons that follow, their motion will be granted in part and denied in part.[1]

### I.    Relevant Procedural History

Wilson commenced this action in May 2022 and later filed an Amended Complaint on October 21, 2022 (ECF No. 28). Federal question jurisdiction is based upon the federal civil rights claims asserted, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is asserted

---

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 18, 19.)

over the state law claims, 28 U.S.C. § 1367(a).

The Amended Complaint includes eight counts: racial and national origin disparate treatment, hostile work environment and retaliation in violation of 42 U.S.C. § 1981 (Count I);[2] racial and national origin disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) (Count II); retaliation under Title VII (Count III); disability disparate treatment in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA) (Count IV); retaliation under the ADA (Count V): interference under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 (FMLA)(Count VI); racial, national origin and disability disparate treatment and a hostile work environment against Columbia Gas in violation of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA) (Count VII); retaliation under the PHRA (Count VIII); and aiding and abetting discrimination against Wargo under the PHRA, 43 P.S. § 955(e) (Count IX).

Pursuant to a stipulation filed on November 10, 2022 (ECF No. 33), Wilson's claims against Wargo are limited to a cause of action for hostile work environment in violation of Section 1981 (Count I) and aiding and abetting a hostile work environment in violation of the PHRA (Count IX). In addition, the parties stipulated that the adverse job actions being challenged in the Amended Complaint under either a theory of retaliation under Section 1981 (Count I), Title VII (Count III), the ADA (Count V) and the PHRA (Count VIII); or disparate treatment under Section 1981 (Count I), Title VII (Count II), the ADA (Count IV) and the PHRA (Count VII) are limited to Wilson "being placed on leave in or around February of 2021 and his discharge and/or constructive discharge in or around September of 2021, without prejudice to

---

[2] This Count is asserted against both Columbia Gas and Wargo. The remaining federal claims are alleged only against Columbia Gas.

2

amend the complaint should discovery reveal Plaintiff suffered additional adverse job actions provided such claims are timely and added under the time frame required by a court-approved scheduling order." (*Id.*)

On November 11, 2022, Defendants filed a partial motion to dismiss (ECF No. 38),[3] which has been fully briefed (ECF Nos. 39, 44).

## II.     Factual Background[4]

### A.     Wilson's Employment by and Issues with Columbia Gas

Wilson, who was born and raised in Jamaica, moved to Pennsylvania in 2002 and began working for Columbia Gas in 2008 as a Service Technician. Sometime around 2013, Wargo became his supervisor. Wargo was promoted to the position of manager in 2019. According to Wilson, he was the only African American and only Jamaican working for Columbia Gas. (Am. Compl. ¶¶ 5-7, 22, 25-29.)

According to Wilson, he maintained perfect attendance and skillfully performed his job during his employment. His annual performance reviews were always satisfactory and he earned annual incentives, bonuses and raises throughout his employment. He also volunteered his time to give back to the community and received various complimentary letters and phone calls from satisfied customers. (*Id.* ¶¶ 30-35.)

Beginning sometime around 2008, Wilson was singled out based on his race and national origin, was subjected to a hostile work environment and was treated differently than similarly

---

[3] Defendants are not moving to dismiss the regarded-as disparate treatment claims under the ADA (Count IV) and the PHRA (Count VII) related to Wilson's leave that are asserted only against Columbia Gas. (ECF No. 38 at 1 n.1.)

[4] As explained below, some of the facts are drawn from the Charge of Discrimination and other documents that Wilson submitted to the Equal Employment Opportunity Commission (EEOC), which are attached either to Defendants' motion to dismiss or Wilson's response. As Wilson notes, Defendants' "Statement of Facts" (ECF No. 39 at 3-6) differs from the allegations of the Amended Complaint and therefore cannot be considered in order to resolve a motion to dismiss.

situated Caucasian employees. These incidents became more frequent over the years. (*Id.* ¶¶ 36-38.) These incidents included the following:

- He was asked whether Jamaican people live in stick houses and was asked to take off his hat so a coworker could defecate in it. (*Id.* ¶¶ 42-43.)

- When he wore collared shirts, he was subjected to ridicule by coworkers telling him that he was "trying to look like a boss." (*Id.* ¶ 45.)

- He was sent to low-income, high crime neighborhoods, even at night, and was referred to "the black guy" throughout his employment. (*Id.* ¶¶ 47-52, 66-67.)

- When he made reasonable requests to be relieved from a shift as soon as possible after it ended, he was accused of refusing to work. Similarly situated white coworkers made these same requests and were not subjected to abusive and harassing comments in response. (*Id.* ¶¶ 110-14.)

- He was assigned "emergency jobs" at the very end of his shift, which were work assignments that Caucasian employees did not want to do. (*Id.* ¶¶ 115-20.)

- Wilson was not invited to a celebration held by Columbia Gas to award and recognize employees with perfect attendance even though he had perfect attendance throughout his career. (*Id.* ¶¶ 128-31; ECF No. 44 Ex. A at 17.)

- While Wilson was on a service call, a property owner subjected him to abusive, threatening, insulting conduct and comments and told him that if he returned to the property, the owner would have him "canned." While he reported this incident to several supervisors and they initially agreed that he should not be sent back to that address, Columbia Gas nonetheless sent him back to the address multiple times between 2014 and 2020, resulting in additional abuse and threats

of violence which he reported. (Am. Compl. ¶¶ 139-55; ECF No. 44 Ex. A at 17-18.)

- The company van which he was assigned had issues with the door-locking mechanism which he reported. However, Columbia Gas refused to have the matter fixed. Similarly situated Caucasian employees who had problems with their work vehicles were not subjected to similar treatment. (Am. Compl. ¶¶ 157-59.)

- When he reported problems with his company computer and smart phone that he needed in order to perform his job, Columbia Gas refused to help or assist him in resolving them. (*Id.* ¶¶ 160-61.)

- Columbia Gas also refused to cover the cost of COVID testing that it required for employees who were out to return to work. (*Id.* ¶ 162.)

Wilson also alleges improper conduct by Wargo. Wargo suspended him for five days without pay based on a false charge that he refused to respond to an emergency call. Wilson reported Wargo's unfair treatment and Columbia Gas returned four of the days for which he had been suspended. However, he still lost one day of pay and no action was taken to deal with Wargo's false charge. (*Id.* ¶¶ 104-07.)

In addition, Wargo "constantly subjected [him] to abusive and condescending words and actions by sneering at [him] and refusing to even acknowledge [Wilson] when [he] spoke." (*Id.* ¶¶ 98-99, 133-35.)  In August 2012, Wargo intentionally canceled Wilson's company credit card so that he could not make purchases related to his employment. Several years later, Wargo disconnected Wilson's company ID badge and refused to address the problem when Wilson reported it to other supervisors, who also refused to address it. (*Id.* ¶¶ 136-37; ECF No. 44 Ex. A

at 17.)

Beginning in 2012 and continuing thereafter, Wilson reported the discrimination and harassment in the workplace multiple times to Wargo and a number of others, including the head of Human Resources. (*Id.* ¶¶ 54-61.) He was called "stupid" when he reported the harassment he faced and no one took any action to investigate or correct the abusive and discriminatory work environment he reported. Rather, the incidents got worse. (*Id.* ¶¶ 48-49, 62-65, 69-71.)

B.  Alleged Medical Issues

In January 2021, Wilson reported to his supervisor, Randy Pappa, that he was concerned that his company phone was not working and that he thought that he was being followed by someone at the direction of Columbia Gas. Several hours later, Wilson was asked to join a telephone conference with various Columbia Gas and union personnel. The head of Human Resources stated that Wilson was "schizophrenic" and was being sent home for two weeks to get a medical exam. (ECF No. 44 Ex. A at 24-25.)[5] *See also* Am. Compl. ¶¶ 183-84 (alleging that it was Pappa who first suggested the idea of the medical exam). Wilson objected to the need for a medical evaluation. (Am. Compl. ¶ 175.)

Wilson was contacted on February 3, 2021 by the Medical Consultant Network and was advised that he would have to undergo a medical evaluation before he could return to work. (*Id.* ¶ 181.) Wilson attended an evaluation by Dr. Robert Wettstein on February 11, 2021. He alleges that Dr. Wettstein was selected by Columbia Gas in order to prepare an evaluation that resulted in him being subjected to further discrimination. (*Id.* ¶¶ 185-87; ECF No. 44 Ex. A at 25.) Dr. Wettstein concluded that he was not "fit for duty" even though no contact was made with his

---

[5] The incident involving Wilson being watched is not described in the Amended Complaint. However, it is included in the materials that Wilson submitted in response to the motion to dismiss. Moreover, it would be impossible to analyze Defendants' motion without considering this incident.

primary care physician nor were his medical records reviewed. Dr. Wettstein also concluded that there was "no evidence of psychosis such as schizophrenia or other serious mental disorder." (Am. Compl. ¶¶ 188-90.) Columbia Gas refused to allow Wilson to return to work in reliance on Dr. Wettstein's conclusions. (*Id.* ¶¶ 191-93) and notified him of this decision in a February 24, 2021 letter. (ECF No. 44 Ex. A at 25.)

Wilson then arranged a meeting with Dr. Joshua Riley-Graham on April 12, 2021, who conducted an evaluation and concluded that Wilson might suffer from slight anxiety caused by the conduct to which he had been subjected at Columbia Gas. Although this conclusion was provided to Columbia Gas, it failed to permit him to return to work. (Am. Compl. ¶¶ 194-98.)[6] Rather, Columbia Gas insisted that Dr. Graham and Dr. Wettstein should agree on a third doctor who would perform another evaluation before Wilson would be allowed to return to work. (*Id.* ¶ 199.) Columbia Gas refused to pay Wilson during his suspension. (*Id.* ¶¶ 200, 202.)

On July 17, 2021, Wilson filed a Charge of Discrimination with the EEOC which was dual filed with the Pennsylvania Human Relations Commission (PHRC). (*Id.* ¶¶ 16-17, 84, 86.) Wilson later advised the EEOC that, because of the financial hardship caused by being placed on unpaid leave, he "found employment elsewhere and resigned from Columbia Gas effective September 3, 2021." (ECF No. 44 Ex. A at 1.)[7]

## III.  Discussion

### A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-

---

[6] Wilson indicates that while he was unable to obtain his own fitness for duty exam because he could not afford it, Dr. Graham was willing to evaluate him. (ECF No. 44 Ex. A at 26.)

[7] This information is contained in documents that Wilson submitted in response to the motion to dismiss. The Amended Complaint does not discuss how or when Wilson's employment came to an end.

pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014).

Defendants have attached three documents to their motion: (1) the Charge of Discrimination that Wilson filed with the EEOC; (2) the fitness for duty exam conclusions reached by Dr. Wettstein; and (3) the results of Wilson's examination by Dr. Graham. They contend that because all three items are described in the Amended Complaint, they are appropriately considered with respect to a motion to dismiss.

Wilson contends that it is not appropriate to examine these documents in resolving the motion to dismiss. He notes that Defendants submitted only part of his EEOC Charge. Further, neither he nor his counsel had the opportunity to review Dr. Wettstein's report and Dr. Graham's report is not described in any detail in the Amended Complaint. At the same time, however, he has submitted other documents that he sent to the EEOC that he characterizes as the remainder of his EEOC Charge. (ECF No. 44 Ex. A.)

Although a plaintiff's EEOC submissions are not "central to" his claims, a number of courts have permitted defendants to attach them to a motion to dismiss when the plaintiff cites them in the complaint and does not dispute their authenticity. *See Lesoon v. Dejoy*, 2020 WL 7264067, at *1 (W.D. Pa. Dec. 10, 2020); *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 WL 6253417, at *3 (W.D. Pa. Dec. 4, 2013). *See also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) (examining EEOC charge on a motion to dismiss to determine if the plaintiff verified it).

Here, Wilson contends that because Defendants have submitted only part of the EEOC document, it is incomplete and misleading. At the same time, he has submitted additional evidence to counter Defendants' interpretation of the document they cite. Thus, the Court concludes that it can review all of the documentation that Wilson provided to the EEOC without converting the motion to dismiss into a motion for summary judgment.

With respect to the other two documents, however, Defendants do not explain why would be appropriate to examine them in the context of a motion to dismiss. The fact that Wilson mentions his evaluations in the Amended Complaint does not mean that his case is "based on" either of them and it is inappropriate to consider these facts at this stage of the proceedings. Therefore, they will not be considered in connection with the pending motion.

      B.  <u>Claims under Section 1981, Title VII and the PHRA</u>

Section 1981 provides that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to. . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). The Court of Appeals has held that § 1981 covers national origin discrimination as well as racial discrimination. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020).

Pursuant to the provisions of Title VII, it is an unlawful employment practice for an employer to discharge or discriminate against any individual because of that individual's race or national origin. 42 U.S.C. § 2000e-2(a)(1).

Acts of discrimination are similarly prohibited under the provisions of the PHRA. *See* 43 P.S. § 955(a) (declaring unlawful discrimination based on "race [or] national origin"). In addition, the PHRA also contains a provision making liable individuals who "aid or abet" discrimination, § 955(e).

Wilson has asserted various claims under these statutes. Each will be addressed in turn.

      1.  Disparate Treatment

To establish a prima facie case of disparate treatment, a plaintiff must show: (1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subject to

an adverse employment action despite being qualified; and (4) the action occurred under circumstances that raise an inference of unlawful discrimination. *Anderson v. Mercer Cty. Sheriff Dep't*, 815 F. App'x 664, 666 (3d Cir. 2020); *Jones v. SEPTA,* 796 F.3d 323, 327 (3d. Cir. 2015). The same analysis applies to Wilson's PHRA claim. *Rosencrans v. Quixote Enters.,* 755 F. App'x 139, 141 (3d Cir. 2018) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

There are two ways to satisfy the fourth element: "(1) introduce evidence of comparators (*i.e.*, similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Drummer v. Hosp. of Univ. of Pa.*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020) (quoting *Greene v. V.I. Water & Power Auth.*, 557 F. App'x. 189, 195 (3d Cir. 2014)); *see Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268-69 (3d Cir. 2010) (stating "comparative evidence is often highly probative of discrimination, [but] it is not an essential element of a plaintiff's case").

By stipulation (ECF No. 33), the parties agreed that Wilson's disparate treatment claims under Section 1981, Title VII, the PHRA and the ADA are limited to Wilson being placed on leave in February 2021 and his discharge and/or constructive discharge in September 2021.[8] Wilson alleges that he was subjected to disparate treatment on the basis of his race and national origin by being compelled to take a medical exam, placed on leave, declared unfit for work and constructively discharged in violation of Section 1981 (Count I), Title VII (Count II) and the PHRA (Count VII). Defendants move to dismiss all of these claims on the ground that he has failed to allege the fourth element of a prima facie case. Specifically, because he has not pointed

---

[8] Defendants' motion regarding the ADA claims will be addressed separately.

to a similarly situated individual not in his protected class who received more favorable treatment, his claims must be dismissed. They argue that Wilson has not identified a white employee who engaged in similar conduct who was required to take a fitness exam and then deemed not fit for duty but was allowed to continue to work.

Defendants are correct that Wilson has not alleged any facts that support his conclusion that a comparator who is not a member of his protected class was treated more favorably under similar circumstances, or even that similar circumstances occurred and were handled differently. Thus, it is necessary to determine if the Amended Complaint pleads sufficient facts to suggest a causal nexus between Wilson's membership in a protected class and the alleged adverse employment actions of requiring a fitness exam, deeming him unfit for work and constructively terminating his employment.

Wilson alleges that when he attempted to get help with his company van, computer and phone, Columbia Gas refused to help him. Instead, his supervisor responded by calling him a schizophrenic and subjecting him to disciplinary action. This included sending him home and ordering him to undergo a medical examination.

In order to defeat a motion to dismiss, it is not necessary to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement.").[9]

---

[9] Defendants' reliance on the Court's opinion in *Norris v. NLMK Pennsylvania, LLC,* No. 2:21-291, is misplaced. The *Norris* decision was at the summary judgment stage based upon a full evidentiary record. Wilson is not required to proffer evidence in support of his claims at this

Despite its length, the Amended Complaint does not plead sufficient facts to establish a plausible nexus between Wilson's membership in a protected class and the adverse employment action of placing him on leave and requiring an examination. While he does allege that similarly situated Caucasian individuals who had "requests regarding their work vehicles were not subjected to refusals to even consider helping by Defendants," the gravamen of his disparate treatment claims does not relate to his protected status at all. Rather, he claims that because he reported issues with his computer, phone and van, he was refused help, labeled as schizophrenic and disciplined. Thus, he has failed to plead a claim for disparate treatment under Section 1981, Title VII and the PHRA.

### 2.   Retaliation

Title VII also prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As held by the Supreme Court, § 1981 covers retaliation. *See CBOCS West, Inc., v. Humphries*, 553 U.S. 442 (2008).[10] *See also* 43 P.S. § 955(d) (the PHRA prohibits retaliation).

Wilson alleges that he was subjected to retaliation when he was required to undergo a fitness for duty exam, placed on leave and constructively discharged, in violation of Section 1981 (Count I), Title VII (Count III) and the PHRA (Count VIII). Defendants argue that these claims are insufficient because his vague and general allegations of unfair treatment and

---

stage of the proceedings.

[10] Section 1981 applies to individuals, *see Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001), while Title VII does not, *see Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc); *Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002).

harassment do not represent legally protected activity upon which a retaliation claim can be based.

As summarized by the Court of Appeals, the elements of a retaliation claim are as follows: 1) the plaintiff engaged in protected activity; 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making a complaint; and 3) there is a causal connection between the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 341-42 (3d Cir. 2006).

For purposes of a prima facie case, a plaintiff need only proffer sufficient evidence to raise the inference that his protected activity was the likely reason for the adverse employment action, not the but-for reason. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249 (3d Cir. 2017). A prima facie case may be shown "by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference" of discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 162 (3d Cir. 1999) (citation omitted). *See also LeBlanc v. Hill Sch.*, 2015 WL 144135, at *15 (E.D. Pa. Jan. 12, 2015) (to determine whether there was materially adverse employment action, the employer's actions may be considered in the aggregate).

To establish a causal link between the protected activity and the adverse employment action, a plaintiff may rely on a "broad array of evidence," for example, temporal proximity, a pattern of antagonism, inconsistent explanations for the adverse action, or other similar circumstantial evidence. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017); *see also*, *Kieffer v. CPR Restoration & Cleaning Services, LLC*, 733 F. App'x 632, 638 (3d Cir. 2018) ("To demonstrate a causal connection, a plaintiff generally must show either (1)

an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.") (citing *Budhun v. Reading Hosp. & Medical Center*, 765 F.3d 245, 258 (3d Cir. 2014)).

As noted above, in order to defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case. *Martinez*, 986 F.3d at 266. "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted)

Defendants suggest that Wilson's retaliation claims are deficient because they raise only general complaints of "unfair treatment." *See Barber v. CSX Distribution Servs.,* 68 F.3d 694, 701-702 (3d Cir. 1995); *Kier v. F. Lackland & Sons, LLC,* 72 F. Supp 3d 597, 616 (E.D. Pa. 2014). Defendants are correct that in any number of instances, the Amended Complaint makes only generic references to Wilson's reports of discrimination. In several places, however, Wilson alleges specific events in which he was treated differently than similarly situated Caucasian employees. A review of these allegations reflects that these events occurred at largely unspecified times over the course of Wilson's approximately thirteen-year employment with Columbia Gas. Thus, as to any such complaints, they do not meet the standard of temporal proximity to Wilson's placement on leave, nor does Wilson allege that any of his complaints about these specific discriminatory practices led to his placement on leave. Moreover, the parties have stipulated that Wilson's retaliation claims are limited to his being placed on leave in 2021 and his subsequent discharge. According to Wilson, these actions came about as a direct result of reporting issues about his van, computer and phone. Notably, he does not allege that he reported to his supervisor that the refusal to help him was discriminatory in nature. Thus, his conduct immediately preceding his leave does not represent protected activity under Title VII, § 1981 or

the PHRA.[11]

Defendants also assert that the only protected activity alleged in the Amended Complaint is his EEOC charge, which occurred after he was placed on leave. Therefore, they argue, Wilson failed to suffer an adverse job action that was causally related to a protected activity. Certainly, "opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management." *Moore*, 461 F.3d at 343 (citation omitted).

The Supreme Court has held that retaliation is not limited to acts related to employment or that occur at the workplace but extends to those actions that would have been materially adverse to a reasonable employee. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Thus, Wilson contends, being labeled "crazy" and a "schizophrenic" and being forced to undergo a fitness for duty exam constitute acts of retaliation. While this may be correct, the fundamental flaw in Wilson's analysis is that his complaints about his van, phone and computer are not alleged to have been conveyed to his supervisor as grounded upon discriminatory conduct, and therefore, are not protected activity. Stated another way, at no point in the Amended Complaint does Wilson claim that he told his supervisor that the refusal to help him was based on his race or national origin. Since his complaints are not protected activity, the

---

[11] In Count VIII (retaliation under the PHRA), Wilson also alleges, among other things, that he "attempted to discuss the issues surrounding Defendant's ideas that [he] could not work because of [his] mental health status," but that Columbia Gas "refused to allow [him] to continue his employment." (Am. Compl. ¶¶ 320, 321.) That is, he appears to be suggesting that his protected activity was complaining about being forced to take a fitness for duty exam and being placed on indefinite leave. However, an employee must show that "the employer took an adverse employment action after or contemporaneous with the protected activity." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). Thus, the protected activity must occur *prior to* the adverse employment action, not after it. *See Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 355 (E.D. Pa. 2013) (rejecting attempt to rely on retaliatory actions that took place prior to the plaintiff's protected activity).

element of causation is necessarily lacking as well.

Thus, as Wilson's allegations are insufficient to state a claim for retaliation, Defendants' motion to dismiss Wilson's retaliation claims in Counts I, III and VIII will be granted.

### 3.   Constructive Discharge Claims

Wilson alleges that he was constructively discharged in violation of Section 1981 (Count I), Title VII (Count II) and the PHRA (Count VII). Defendants argue that he has failed to plead that he was constructively discharged because he was not subjected to conditions so intolerable that a reasonable person would be forced to resign. Rather, they contend that according to his allegations, he was placed on leave after he failed a fitness for duty exam, and then refused to apply for short-term disability so that he could continue to be paid. Moreover, they assert, he was not threatened with discharge and because he was on leave, he does not allege that he sustained any harassing conduct during this time. In fact, he resigned several months after being placed on leave.

The Court of Appeals has held that "ordering [an employee] to see a psychiatrist, without more, did not adversely affect his status as an employee" and that "merely being required to undergo an evaluation does not harm the [employee's] employment opportunities." *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005). At the same time, placing an employee on indefinite leave against his wishes after he fails a fitness for duty exam can constitute "an adverse employment action because it adversely affected the terms, compensations, and conditions of [his] employment." *Diaz v. Lezanski*, 2011 WL 2115671, at *6 (D.N.J. May 25, 2011). *See also Moore*, 461 F.3d at 346.

Defendants cite several cases in which employees were placed on short-term leave (often

paid) while an investigation was being conducted.[12] *See Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 929 (8th Cir. 2000); *Ford v. City of Crawfordsville*, 2011 WL 778051, at *9 (S.D. Ind. Feb. 28, 2011) (when employee received a three-day suspension and was expected to return to work, there was no "handwriting on the wall" suggesting that her termination was imminent or inevitable). *See also Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) ("A paid suspension pending an investigation of an employee's alleged wrongdoing does not fall under any of the forms of adverse action mentioned by Title VII's substantive provision.") This is not what Wilson alleges occurred here, however. Regardless of what occurred prior to the exam, Wilson has alleged that he was placed on indefinite unpaid leave *after* he failed a fitness for duty exam.

A district court faced a similar situation in *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229 (S.D.N.Y. 2017). In that case, the defendant moved to dismiss a constructive discharge claim on the ground that the plaintiff failed to allege a hostile work environment claim regarding "intolerable conditions." The court rejected this argument, stating that:

> As an initial matter, in all of the cases Saks cites, the plaintiff asserted both a hostile work environment and a constructive discharge claim based on the same set of facts. This type of constructive discharge claim has been characterized as a "hostile-environment constructive discharge" claim and requires that a plaintiff sufficiently allege a hostile work environment in order to adequately allege a constructive discharge claim. *See Pennsylvania State Police v. Suders,* 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (describing a hostile-environment constructive discharge claim as a "compound claim" requiring a plaintiff to allege both that the offending behavior was so severe or pervasive that it created an "abusive working environment" and that the environment was so intolerable that a reasonable person would have felt compelled to resign). Here,

---

[12] Defendants also cite *Behm v. Mack Trucks, Inc.*, 2022 WL 2068425, at *6 (E.D. Pa. June 8, 2022). In that case, however, the plaintiff was cleared for return to work but resigned instead. Thus, whether the conditions she experienced during her medical leave were intolerable was a relevant consideration. *See also Tanganelli v. Talbots, Inc.*, 169 F. App'x 123, 127 (3d Cir. 2006) (after assistant manager *returned* from medical leave and reported only minor issues, she did not suffer a constructive discharge).

however, the basis for Plaintiff's constructive discharge claim is not a hostile or abusive work environment, but rather his indefinite suspension without pay.

Courts have found that a drastic change in employment status or responsibilities can amount to a constructive discharge. Specifically, a "demotion, particularly one that is accompanied by a significant loss of salary, prestige or responsibilities, or is otherwise 'humiliating,' may also, on its own, give rise to a constructive discharge claim." *Bader v. Special Metals Corp.*, 985 F.Supp.2d 291, 310 (N.D.N.Y. 2013) (citing *Suders*, 542 U.S. at 133, 124 S.Ct. 2342); *see also Dean v. Westchester County Dist. Attorney's Office*, 119 F. Supp. 2d 424, 431 (S.D.N.Y. 2000) ("A demotion with a reduction in pay and loss of employee benefits, when accompanied by evidence of malicious intent, can establish constructive discharge."); *Halbrook v. Reichhold Chemicals, Inc.*, 735 F. Supp. 121, 126 (S.D.N.Y. 1990) ("[E]vidence of a reduction in job responsibilities to the point where an employee has nothing meaningful to do with her time can lead to an inference of constructive discharge.").

*Id.* at 243. *See also Ford*, 2011 WL 778051, at *9 (explaining the difference between two types of constructive discharge).

Defendants also rely on *Adkison v. Willis*, 214 F. Supp. 3d 1190 (N.D. Ala. 2016). In that case, the court held that a sheriff's deputy could not maintain a claim for constructive discharge when the sheriff told him that he could not return to work until he obtained a valid fitness-for-duty certification. The court granted summary judgment for the employer because the forced leave did not create "intolerable conditions" and because there was no evidence that the sheriff intended to force plaintiff to resign. In that case, the sheriff remained in contact with the plaintiff, paid for his evaluations and by the time he was notified that the plaintiff could return to work based on these evaluations, the plaintiff had accepted employment elsewhere. *Id.* at 1199.

The *Adkison* case is distinguishable both because it was decided on a motion for summary judgment and because of the material differences in the facts at issue.[13] Here, Wilson alleges that Columbia Gas did not remain in contact with him and he was unable to obtain his

---

[13] Moreover, the *Adkison* court did not distinguish a hostile environment constructive discharge claim from a claim based on conditions such as indefinite suspension without pay.

own fitness for duty exam because he could not afford to pay for one. He also pleads that even after he provided some evidence to support his return to work, Columbia Gas refused to accept it.

As in *Bright-Asante*, although Wilson does allege a hostile work environment claim, the basis for his constructive discharge claim as pleaded is his indefinite suspension without pay based upon failing a fitness for duty exam. Not only was there no projected end to the suspension, but Wilson has alleged that, even when he attempted to challenge the basis for his forced leave by responding to Dr. Wettstein's conclusions, Columbia Gas did not allow him to return to work. If proven, this situation represented a "drastic change in employment status" that can amount to a constructive discharge. *See also Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993) (factors indicating a constructive discharge include: a demotion or reduction in pay or benefits; involuntary transfer to a less desirable position; and alteration of job responsibilities); *Burton v. Pennsylvania Bd. of Probation & Parole*, 2002 WL 1332808, at *4 (E.D. Pa. June 13, 2002) (Black parole supervisor who was given more onerous work assignments than white coworkers, unfairly and disproportionately reprimanded on numerous occasions and given a written reprimand that thwarted any future potential for promotions stated a claim for constructive discharge).[14]

Moreover, while Defendants contend that Wilson was paid "for part of the time" during his suspension, he alleges that he was not.[15] Defendants also note that Wilson admitted in his EEOC charge that he was on paid leave. It is true that the EEOC charge includes the statement "I

---

[14] Indeed, even if Wilson was not constructively discharged, Defendants have not explained how keeping him on indefinite unpaid leave does not constitute an adverse employment action.

[15] See Am. Compl. ¶ 200 (he was "subjected to a suspension without pay"); ¶ 202 (Columbia Gas "refused to pay Mr. Wilson during the illegal suspension without pay"; ¶ 204 (he was "ejected from his employment without pay"); ¶ 206 (Columbia Gas "refused to pay" him); ¶ 251 (Wilson "has been deprived money that [he] should have been paid but for the intentional discrimination").

received my last paycheck around 3/23/21." (ECF No. 39 Ex. A at 1.) But the same document also states that Columbia Gas "started me on unpaid leave, which I am currently still on." (*Id.*)[16]

For purposes of evaluating a motion to dismiss, Wilson's allegations that he was not paid must be accepted as true. Thus, at this time, the Court cannot resolve the disputed issue of whether Wilson could have received short-term disability payments and thus was not deprived of all pay,[17] as this is beyond the scope of a motion to dismiss. Therefore, Defendants' motion to dismiss regarding his claims for constructive discharge in Counts I, II, and VII will be denied.

4.   Hostile Work Environment Claims

Wilson alleges that he was subjected to a hostile work environment based on his race and national origin in violation of Section 1981 (Count I), Title VII (Count II) and the PHRA (Count VII). Defendants move to dismiss these claims on the grounds that he has not alleged facts that support the requisite elements of a hostile work environment.

A violation of Section 1981 and Title VII may be established if a plaintiff can show that discrimination based on a protected characteristic created a hostile or abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). With respect to a hostile work environment claim, the Court of Appeals has held that:

> [A] plaintiff must show that "1) the employee suffered intentional discrimination because of his/her [race or national origin], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability [meaning the

_____

[16] *See also id.* at 2 ("As a result of the unpaid leave, I cannot afford to pay for the fitness to return for duty.") In the materials submitted to the EEOC, Wilson states that he was "on leave without pay" (ECF No. 44 Ex. A at 6); "I was sent home without pay" (*id.* at 25); he was "on leave without pay" (*id.* at 26, 29); and the "Union asked why I am not being paid" (*id.* at 28).

[17] Defendants appear to be suggesting that, since Wilson could have applied for short-term disability and been paid, he cannot claim that he was suspended without pay. Wilson states that he did not apply for short-term disability because he believed it would have been fraudulent since he was not disabled. (ECF No. 44 Ex. A at 4.)

employer is responsible]."

*Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). *See also Faragher*, 524 U.S. at 786-87 & n.1; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996). The same standards apply under the PHRA. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

### a.   *Claim against Columbia Gas*

Defendants first contend that Wilson has not alleged "intentional" discrimination because many of the incidents he cites (being called "stupid," being told he was "acting like a boss" when he wore collared shirts, the incident involving his hat,[18] having his ID badge disconnected and credit card cancelled, not being invited to the perfect attendance awards event, the van door that locked on its own, computer and phone problems) are "neutral," that is, they do not relate directly to his race or national origin. Nevertheless, he has also cited remarks that did relate to his race (being repeatedly referred to in a derogatory manner as "the black guy") and national origin (being asked if all Jamaicans live in stick houses). He also alleges that he was assigned to jobs Caucasian employees did not want to do and unlike similarly situated employees outside of his protected status, was given "emergency jobs" at the end of his shift. Further, it was a common practice to send him to properties where it was known that he would be subject to harassment because of his race and national origin.

In *Castleberry*, the Court of Appeals clarified that the standard for the second element of a hostile environment claim is "severe *or* pervasive." 863 F.3d at 264. Indeed, the court held in *Castleberry* that a single use of the highly-charged "n-word" was sufficiently severe to state a

---

[18] Wilson told the EEOC that: "The type of hat I wear is a gentleman cap, not a baseball cap like the other employees wear. A coworker told me to take my hat off so he could defecate in it." (ECF No. 44 Ex. A at 16.) Thus, like the collared shirts, it was Wilson's choice of attire that triggered the unpleasant remark, not his race or national origin.

claim for a racially hostile work environment. *Id.* at 265.

Wilson does not point to any examples of "severe" discrimination. The comments he cites, while rude and unpleasant, do not rise to the level of being severe. However, he does allege that the comments were pervasive in that they took place repeatedly over a ten-year period.

Most of the cases cited by Defendants to support the argument that Wilson has not pointed to pervasive harassment were decided on motions for summary judgment with fully developed records.[19] By contrast, cases decided on motions to dismiss typically involve isolated incidents which were not severe or pervasive. *See Chandler v. La-Z Boy, Inc.*, 2022 WL 3357674, at *3 (E.D. Pa. Aug. 15, 2022) (single instance of being called a "colored girl" plus some taunts that were not racially based or motivated); *Newman v. Point Park Univ.*, 2022 WL 969601, at *25-27 (W.D. Pa. Mar. 31, 2022) (professor's complaints, which related mostly to academic disagreements with others, plus two isolated antisemitic remarks made months apart by different people); *Lara v. Samuel Adams Pa. Brewing Co., LLC*, 2020 WL 5211206, at *11 (E.D. Pa. Sept. 1, 2020) (single comment by coworker that she was tired of a staffing agency "hiring all these blacks and Puerto Ricans," followed by her affirmation that she was a racist, plus Lara's complaint that the company's "white hat, yellow hat" system from distinguishing permanent from temporary employees created a de facto segregation system, his loss of overtime and his frustration with what he perceived as the company's failure to take action regarding his

---

[19] *See Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71, 79 (3d Cir. 2006); *Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 77 (3d Cir. 2003); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667 (3d Cir. 1999); *Nitkin v. Main Line Health*, 2021 WL 4860742, at *11 (E.D. Pa. Oct. 18, 2021); *Pineda v. Philadelphia Media Holdings, LLC*, 542 F. Supp. 2d 419, 428-29 (E.D. Pa. 2008); *Palma v. Volunteers of America*, 2006 WL 328352, at *6 (E.D. Pa. Feb. 9, 2006); *Boyer v. Johnson Matthey, Inc.*, 2005 WL 35893, at *16 n.24 (E.D. Pa. Jan. 6, 2005); *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 643-44 (E.D. Pa. 2004); *James v. Allentown Bus. Sch.*, 2003 WL 21652189, at *17 (E.D. Pa. June 2, 2003); *Gharzouzi v. Northwestern Human Servs. of Pa.*, 225 F. Supp. 2d 514, 534 (E.D. Pa. 2002); *Al-Salem v. Bucks Cnty. Water & Sewer Auth.*, 1999 WL 167729, at *5 (E.D. Pa. Mar. 25, 1999).

complaints); *Burton*, 2002 WL 1332808, at *3 (isolated incident of another employee wearing an offensive t-shirt, plus alleged disproportionate work assignments and unfair reprimand). *But see Noel v. United Parcel Serv., Inc.*, 2014 WL 4452667, at *9 (D. Md. Sept. 9, 2014) (employee whose supervisor threatened to fire him, mocked his accent, called him "Haitian boy," asked if they had cars in Haiti or rode elephants and assigned him more difficult work stated a claim for hostile work environment).

Defendants also cite *Bellamy v. Waterfront Square Condominiums*, 2013 WL 607848 (E.D. Pa. Feb. 19, 2013), in support of their position. In that case, the plaintiff's only specific factual allegations were that Milner (a general manager) referred to her and other black employees to as "you people," that she "refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general," that she "attempted to eliminate Martin Luther King Day as an observed holiday" and that she "express[ed] contempt for its inclusion as a holiday." The court concluded that: "Absent any allegations concerning the frequency of Milner's alleged offensive remarks or specific facts from which the Court may infer that Milner's alleged conduct unreasonably interfered with plaintiff's performance at work, I find that the conduct alleged is not sufficiently severe and pervasive to evidence the requisite change in the conditions of plaintiff's work environment." *Id.* at *5.[20] *See also Wesley v. PNC Bank*, 2020 WL 7319548, at *6-7 (E.D. Pa. Dec. 11, 2020) (bank teller did not provide any relevant dates or frequency of comments that teller would be "better off" working in an inner-city branch because she was Black and thus could not state a claim of a racially hostile work environment).

---

[20] The court did not suggest that Milner's actions were "neutral" because they did not explicitly mention Bellamy's race. On the contrary, the Court of Appeals held in *Aman* that the use of phrases such as "another one," "one of them," "that one in there," and "all of you" are "inherently racist" and can create a hostile work environment. 85 F.3d at 1082.

Some of the incidents Wilson cites, such as not being invited to the perfect attendance event, the cancellation of his credit card and disconnection of his ID badge, difficulties with computers, phones and the van locking itself, are not actionable as they are described. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001) (simple teasing, offhand comments and non-serious isolated incidents are insufficient). In addition, he cannot cite the five-day suspension (later reduced to one day) he received from Wargo as part of his hostile work environment claim because it was a discrete incident. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (distinguishing between discrete acts which are individually actionable—including a wrongful suspension—and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim).

However, Wilson has also alleged that Columbia Gas personnel frequently referred to him as "the black guy" and that they did so "throughout his employment;" that they required him, unlike similarly situated Caucasian employees, to take assignments at the very end of his shift or perform jobs that Caucasian employees did not want to do; that he was sent to dangerous neighborhoods based upon his race and national origin; and that he was sent 31 times to a location despite the fact that the property owner harassed and threatened him because he is Jamaican.[21] Wilson alleges that these activities occurred on a "continuous, nonstop basis" throughout his employment without remedial action despite reporting this behavior multiple times to at least four Columbia Gas supervisors or human resources personnel.

"An employer may be liable under Title VII for the harassing conduct of third parties if

---

[21] Defendants contend that Wilson did not learn until "years later" that the property owner had informed Columbia Gas that "if they send that Jamaican back, I am going to shoot him." The fact that Wilson only learned about this specific threat later is beside the point. Wilson has alleged that he was threatened and harassed by the property owner *at the time*, that he reported these incidents to his supervisors and that Columbia Gas continued to order him back to the property.

the employer was aware of the conduct and failed to take reasonable remedial action in response." *Johnson v. Bally's Atl. City*, 147 F. App'x 284, 286 (3d Cir. 2005) (citing *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998)). *See* 29 C.F.R. § 1606.8(e). In *Johnson*, the plaintiff was an African American man who was employed as a part-time dealer in a casino and who alleged that he was regularly subjected to racist comments by casino customers using the racial slur "monkey" in reference to him and shouting phrases such as "Come on, monkey," "You, monkey," and "Big monkey," while they gambled at his table. Johnson asserted that, although he complained, Bally's failed to take remedial action and his supervisors intentionally assigned him to tables with verbally abusive customers. The court held that these allegations sufficiently alleged a claim of a racially hostile work environment. In *Lockard*, a waitress reported that a table of men were harassing her, but her shift manager kept ordering her to return to the table, where she was assaulted. The court held that, under the circumstances, the employer could be held liable for failing to remedy or prevent a hostile work environment. *See also Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 651-52 (9th Cir. 2021) (nail salon manager instructed male manicurist to finish pedicure of customer who propositioned him after manicurist complained of this conduct, thereby conveying that he was expected to tolerate customer's harassment as part of his job).

Columbia Gas also contends that Wilson fails to plead the third and fourth elements, that the discrimination detrimentally affected him and that it would detrimentally affect a reasonable person in like circumstances. With respect to the third element, Wilson alleges that he repeatedly reported the offensive comments to his supervisors and HR. He did not have to explicitly inform Columbia Ga that he was "offended." Indeed, the very fact that he reported these incidents is sufficient evidence that he was offended. *See Mandel*, 706 F.3d at 169 (describing this element

as an "inherently subjective question" that "turns on credibility determinations.") Further, whether a reasonable person in like circumstances would have been affected cannot be resolved on a motion to dismiss and Columbia Gas cites no authority suggesting otherwise.

### b.  Claim Against Wargo in Count I

Defendants also move to dismiss the hostile work environment claim asserted against Wargo under Section 1981 (Count I) on the ground that Wilson fails to plead any facts suggesting that Wargo was involved in any race-based harassing behavior. Rather, they note that Wilson alleges only that Wargo disciplined him and canceled his company credit card in 2012— years prior to the statute of limitations—and that he ignored Wilson on some unspecified occasion.[22]

The Court of Appeals "has found individual liability under § 1981 'when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable." *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) (citing *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986)). In that case, the court found a "sufficient basis to raise a question of fact as to [a supervisor's] liability on the basis of intentional discrimination under … § 1981" because he "was deliberately indifferent to, or participated in, [the] alleged harassment of Cardenas." *Id.* at 269.

Defendants note that Wilson does not allege that Wargo called him race-based names or used discriminatory race-based language or gestures or caused or directed anyone else to do so. *See Brown v. TD Bank, N.A.*, 2016 WL 1298973, at *10 (E.D. Pa. Apr. 4, 2016) (plaintiff failed to state a claim against one supervisor by alleging that he placed him on a PIP and noted that his

---

[22] As Wilson notes, the statute of limitations for the Section 1981 claims he alleges is four years. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). Thus, any incidents that occurred on or after May 26, 2018 would be timely.

credit reports were not yet due; another supervisor allegedly belittled him in one meeting; and a third allegedly failed to investigate his claims of discrimination, told him he was suspended and accused him of taking loan documents).

Wilson has not responded to this argument. Because he has not pleaded any discriminatory actions by Wargo within the statutory period, the hostile work environment claim against Wargo in Count I will be dismissed.

### c.   *Claim Against Wargo in Count IX*

Wilson also asserts in Count IX that Wargo discriminated against him by aiding and abetting a hostile work environment in violation of the PHRA.[23] Although Wilson does not allege that Wargo engaged in any discriminatory conduct, he does allege that he reported discriminatory conduct to Wargo, among others. (Am. Compl. ¶ 54.) This is sufficient to allege a claim of aiding and abetting liability against Wargo. *See Dici v. Commonwealth of Pa.*, 91 F.3d 542, 553 (3d Cir. 1996) (when the plaintiff alleged that she told a supervisor that she was being subjected to harassment and he refused to take prompt action to end it, "Such conduct, if proven, would constitute aiding and abetting.") Therefore, this claim will not be dismissed.

### 5.   Exhaustion

Defendants also contend that Wilson cannot maintain a claim of racial discrimination against Columbia Gas under either Title VII (Count II) or the PHRA (Count VII) because he did

---

[23] Defendants also move to dismiss Count IX on the ground that Wilson did not name Wargo on the EEOC charge cover sheet. Given the dismissal of this claim on the merits, the Court need not reach this issue. Notably, however, Wargo is named 34 times in the materials he submitted to the EEOC. A PHRA action ordinarily may be brought only against a party named in a PHRC charge. 43 P.S. § 959(a). However, a party need not be named in the caption so long as he is named in the body of the charge. *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 688 (W.D. Pa. 2018); *Hitchens v. Greater Pittsburgh Cmty. Food Bank*, 2006 WL 3051901, at *3 (W.D. Pa. Oct. 23, 2006); *Zarazed v. Spar Mgmt. Servs., Inc.*, 2006 WL 224050, at *6 (E.D. Pa. Jan. 27, 2006).

not allege such claims in his EEOC charge. Wilson notes that he did discuss race in his EEOC documents, even if he did not "check the box" on the cover sheet.

Title VII requires a plaintiff to exhaust administrative remedies prior to bringing suit in court by filing an administrative claim with the EEOC. 42 U.S.C. § 2000e-5(e)(1). A plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). The same is true with respect to claims under the PHRA. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

Defendants have submitted Wilson's EEOC charge cover sheet, on which he checked boxes indicating he was raising claims of national origin, disability and retaliation discrimination. He did not check the box for racial discrimination and did not use this term in his brief listing of "particulars." (ECF No. 39 Ex. A at 1, 2.)

Wilson has submitted additional information that he supplied to the EEOC, which he describes as the remainder of his charge. (ECF No. 44 Ex. A.) In these documents, he states, inter alia, that he was subjected to "racial remarks" (*id.* at 5) and responds to a request from the agency to identify the coworker who said "what is that black guy about?" (*Id.* at 6, 7, 16.) This evidence supports Wilson's contention that he did provide the EEOC with notice that he was raising racial discrimination claims.

The mere failure to check a specific box on the EEOC charge form is not a fatal error. *See Doe v. Kohn Nast & Graf, P.C.*, 866 F. Supp. 190, 196 & n. 2 (E.D. Pa. 1994). Rather, "[t]he most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement." *Id.* at 197.

In addition, a reasonable EEOC investigation should include claims not specifically

mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." *Pourkay v. City of Philadelphia*, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009) (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984)). "In such a case, the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely." *Schouten v. CSX Transp., Inc.*, 58 F.Supp.2d 614, 616-17 (E.D. Pa. 1999). In *Schouten*, the plaintiff brought a federal suit for discrimination based on race, national origin, and retaliation. The EEOC charge alleged racial discrimination and the factual statement included the statement that the plaintiff was told "that I had an accent and would not be a good conductor." Based on this statement, the court held that national origin discrimination was within the scope of the investigation. The court also noted that it seemed "possible, if not probable, that [the plaintiff], who [was] unschooled in the technical distinction between racial and national origin discrimination, assumed that the actions [on the part of defendant] constituted the former as opposed to the latter." *Id.* "In such situations, 'not to allow the lawsuit would ... penalize ... a lay person for not attaching the correct conclusion to [his] claim and thus would ... constitute ... an improperly narrow construction of Title VII.'" *Id.* (citing *Rodriguez v. Am. Parts Sys.*, 1986 WL 13034, at *2 (E.D. Pa. Nov.19, 1986)).

In the cases cited by Defendants, the unexhausted claims were substantially different than those that the plaintiffs included in their EEOC charges. *See Antol*, 82 F.3d at 1295 (disability claim gave EEOC no notice of gender discrimination claim); *Spindler v. Southeastern Pa. Transp. Auth.*, 47 F. App'x 92, 94 (3d Cir. 2002) (disability claim gave EEOC no notice of racial discrimination claim); *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (gender discrimination relating to plaintiff's discharge did not give EEOC notice of hostile work environment claim); *Brown v. Saint Vincent Health Ctr.*, 2022 WL 865818, at *2 (W.D. Pa. Mar.

23, 2022) (charge contained no allegations of gender discrimination); *Ocasio v. City of Bethlehem*, 2009 WL 37518, at *4 (E.D. Pa. Jan. 7, 2009) (race and national origin claims surrounding the defendant's failure to promote the plaintiff did not put EEOC on notice that it should investigate potential harassment, hostile work environment, or retaliation issues arising out of separate incidents).

Not only did Wilson raise race as an issue in documents he submitted to the EEOC, but his clam of national origin discrimination based on being Jamaican clearly overlaps with a claim of racial discrimination based on being Black. Thus, Wilson will not be penalized for failing to check the "right box" on a form, particularly when the information as a whole was sufficient to put the EEOC and Columbia Gas on notice of his claims. Therefore, Defendants' argument for dismissal of these claims based on failure to exhaust will be denied.

C.   ADA Claims

Wilson asserts two claims against Columbia Gas only under the ADA: disparate treatment (Count IV) and retaliation (Count V).

The ADA provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Retaliation is also prohibited under the ADA. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Retaliation claims under the ADA can also involve "retaliation against an employee for

requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010).

In Count IV, Wilson alleges that at all relevant times, he was able to fulfill his job requirements but Columbia Gas manufactured discriminatory conditions to his employment that did not exist for any other employee. He further alleges that he was wrongfully perceived as disabled and that Columbia Gas attempted to use his medical status to keep him from continuing his employment. Thus, he was intentionally regarded as having a disability in order to force him out of his employment.

Columbia Gas seeks dismissal of the portion of Count IV that is based on a constructive discharge. As discussed previously, however, Wilson has alleged sufficient facts to support a claim of constructive discharge. Therefore, Defendants' motion to dismiss this aspect of the ADA claim in Count IV will be denied.

The same is not the case with respect to Count V, however. Significantly, Wilson does not allege in Count V that Columbia Gas retaliated against him for exercising any right related to an "act or practice made unlawful" by the ADA, i.e., discrimination based upon a disability. 42 U.S.C. § 12203(a). Indeed, Wilson specifically alleges that Columbia Gas's perception of his "alleged disability" was "entirely unfounded and unsubstantiated" and that he was capable of performing his job duties without any restrictions.[24] Rather, he alleges that Columbia Gas retaliated against him based upon his complaints of racial and national origin discrimination and harassment. Thus, while Wilson he has stated a claim for disparate treatment based on a perceived disability of having schizophrenia as alleged in Count IV and its state-law equivalent in Count VII (and Defendants have not moved to dismiss these claims), his allegations do not

---

[24] *See, e.g.,* Am. Compl. ¶¶ 167, 175, 283, 284 which are incorporated by reference in Count V.

support a claim of retaliatory discrimination under the ADA. Therefore, Count V should be dismissed.

### D. FMLA Claim

The FMLA provides that:

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave:
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). The FMLA was enacted in 1993 for two purposes: to "balance the demands of the workplace with the needs of families" and to "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1-2). The Act grants to an "eligible employee," among other things, the right to twelve workweeks of leave, over any period of twelve months, "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The leave may be taken intermittently or by reduced schedule when medically necessary. 29 U.S.C. § 2612(b)(1).

The Act contains two relatively distinct types of provisions: a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions which set floors for employer conduct, 29 U.S.C. §§ 2612, 2614(a)(1); and protection against discrimination based on the exercise of these rights, often referred to as the "discrimination" or "retaliation" provisions, 29 U.S.C. § 2615(a)(1-2); 29 C.F.R. § 825.220(c). *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). An employee may bring suit to

enforce these rights pursuant to section 2617(a) of the Act. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004).

Here, Wilson asserts only an interference claim. To make out a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted).

Defendants contend that Wilson has not stated an FMLA interference claim. He does not allege that he requested FMLA leave which was denied. Rather, he was put on leave by Columbia Gas after he failed a fitness for duty exam. Thus, Defendants argue that, if anything, Wilson received all FMLA leave to which he was entitled.

Wilson argues that Columbia Gas forced him to use FMLA leave against his will by placing him on leave after he failed the fitness for duty exam. Even accepting Wilson's version of events as true, however, he has not explained how it states a claim for FMLA interference. Therefore, Count VI will be dismissed.

## IV.  Conclusion

For the reasons explained above, Defendants' partial motion to dismiss will be granted in part and denied in part. With respect to Defendant Columbia Gas, the disparate treatment claims in Counts I, II and VII and the retaliation claims in Counts I and III will be dismissed; and Counts V, VI and VIII will be dismissed. Columbia Gas's motion is otherwise denied.

With respect to Defendant Wargo, the hostile work environment claim against him in Count I will be dismissed. The motion to dismiss Count IX will be denied.

The Court also concludes that granting further leave to amend with respect to these claims would be futile. The Amended Complaint consists of 324 paragraphs. The Court has also considered his EEO filing. Wilson has already amended his complaint once and does not argue that he could offer additional facts to overcome Defendants' motion. *See Fletcher -Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 253 (3d Cir. 2007) (if Wilson "had knowledge of facts that would cure the defects in [his] complaint, [he] should have asserted them before now."). There, the dismissal of the claims identified above will be with prejudice.

An appropriate order follows.


Dated: June 7, 2023                                                    /s/ Patricia L Dodge
                                                                                  PATRICIA L. DODGE
                                                                                  United States Magistrate Judge